1 WS 445
21 SC 4246

## Rice *against* Bixler.

A testator devised his real estate to his executor, to be sold, and directed the proceeds to be divided among his children; *held* that the children had such an interest in the land, as justified them in compromising a question of boundary, if such compromise did not affect the rights of creditors.

If a witness, in the course of his examination, be asked to testify respecting a transaction, before the question is answered it is competent for the other party to inquire and know whether the transaction be in writing; and if it be, the witness cannot be permitted to give parol evidence on the subject.

If an action of ejectment be brought by an executor, it is competent for the defendant to give in evidence a former ejectment by the plaintiff in his individual right, to show that he claimed the land as his own, and not in his representative capacity.

If land be devised to an executor, to be sold, and the proceeds to be divided among the testator's children, and the children convey the land to the executor, their deeds are evidence of an election on their part, to take land instead of money.

The compromise of a doubtful right is a sufficient consideration for the execution and delivery of a deed.

If an executor, having power to sell real estate for the payment of legacies, advise the legatees to compromise and settle a question of boundary, and they do so, such compromise is binding upon the executor ever afterwards, whether he claim the land as executor, or in his own right.

If, in an action of ejectment, the defendant set up such a defence as defeats the plaintiff's action, and a second ejectment be brought by the same plaintiff, the defendant may repudiate the defence which he made in the first action, and defeat the plaintiff's recovery upon other grounds.

ERROR to the Common Pleas of *Perry* county.

John Rice, administrator with the will annnexed, of Patrick Duffield deceased, against Joseph Bixler.

This was an action of ejectment for twenty acres of land. Patrick Duffield in his lifetime was seised in fee of a tract of land, containing about 290 acres; which in 1820 he had surveyed and divided into two parts, the eastern and western part. This was done for the purpose of conveying the western part, which he supposed to contain 60 acres, to his son-in-law, Andrew M'Clure, which he did; but Andrew M'Clure, in 1824, reconveyed the same to Patrick Duffield, who in 1825 made his will, by which he directed his executors to sell the eastern part of his land, and out of the proceeds to pay his debts, &c. which then amounted to about $1000; as to the western half, he directed that it should be rented by his executors, during the lifetime of his wife (who was to have possession of the house and garden), and the proceeds applied to support his wife and son Robert; and, after the death of his wife, he directed that this part should also be sold, and the proceeds divided equally between

L. — 2 N

[Rice v. Bixler.]

his sons James and Robert, and his daughter, Mary Robinson. After the making of this will, in 1828, Patrick Duffield sold and conveyed, by courses and distances, the eastern part of his land to the defendant, Joseph Bixler, and out of the consideration money, the $1000 of debts were paid in his lifetime. He died in 1831, without altering his will, which was duly proved in the register's office, but no letters issued upon it to the executors named. It appeared that George Monroe, Esq. had made the survey and division of the land for Patrick Duffield in 1819, so as to divide off the 60 acres, which were conveyed to Andrew M'Clure; and that, in making the calculation of the 60 acres, so as to fix the division line between the eastern and western end, he omitted one of the lines; the consequence of which was, that the partition line (if ever it was run upon the ground, which was a disputed fact in the cause) would not close with the survey of either part, but if run on the ground at the place contended for by the plaintiff, the land in dispute would belong to the western part; but if the line was run according to the courses and distances, as contained in the deed from Duffield to Bixler, the survey would not close, but the line would embrace the land in dispute. Where this partition line was and the land affected by it was the subject of dispute. The plaintiff gave some evidence tending to show that the line was run by Monroe in 1819, and that M'Clure, while he owned the western part, occupied up to it, and that Bixler recognised it as the true line. The defendant denied that any partition line had ever been run on the ground, and proved the mistake made by Monroe in leaving out the line in his calculation; and that if the plaintiff's line were adopted as the true one, the defendant would have but 210 acres, instead of 230 conveyed to him, and that there would be 80 acres, instead of 60, in the western end. During the progress of the trial, several bills of exception were taken, as follows:

Defendant offered to prove that the courses and distances, as marked in the deed from Patrick Duffield and wife to Bixler, would, if run on the ground, include the land in dispute; and that the division line, said to be run by Esquire Monroe, in 1819, never was marked upon the ground. The first part of the offer was objected to by the plaintiff. That it is immaterial to this issue. That the line run on the ground is the true survey. To the last branch of the offer, the plaintiff objected, that the evidence was immaterial, and could lead to no result in this suit.

Objections overruled, and exception by plaintiff.

William West, a surveyor, was then called as a witness, and gave the evidence offered, and in addition that he had run a line making a partition of the two parts, by which line he gave to Bixler the quantity conveyed to him by Patrick Duffield, and still left about 75 acres in the west end.

Defendant then offered articles of agreement dated 29th Decem-

ber 1838, by John Duffield, Thomas Duffield, Joseph Robinson, and Mary his wife, and R. E. Duffield, with Joseph Bixler, adopting the amicable line as run by Mr West, as the true line: to be followed with parol proof that it was executed by Joseph Robinson and wife, and Robert E. Duffield, with the knowledge, consent and advice of John Rice, the present plaintiff, who is a subscribing witness to the agreement: to be followed by a deed of conveyance from Joseph Robinson and wife, James Duffield, and Robert E. Duffield to John Rice for the quantity of land within the line run by Mr West, recognising that line as designating the true quantity.

Plaintiff objected that these persons, parties to the article, had no right to the land, nor to change its boundaries in any way. All or any of these acts would be inoperative in this suit. John Rice could do no act that could affect his right as administrator of Duffield: he was not administrator for a year afterwards. That John Rice could not take a deed to affect his right as administrator, particularly as he was not administrator at that time, and could not give evidence for the purpose now offered, of affecting this suit. That they do not import what is alleged: they are *inoperative*, because they do not prove any thing as to the right of the land being in or out of Duffield, or any thing as to whether Monroe's or West's line is correct. At all events, the proof of the payment of debts should precede the other proof.

Defendant offered to prove in addition to his foregoing offer, that the debts of P. Duffield were paid in his lifetime by the Bixlers out of the purchase money of the land sold to them, and further, that John Rice is now in the actual possession of the land, claiming it as his own right, and adversely to the trust created by P. Duffield's will, and that he is the only party in interest in this suit.

Plaintiff objected to defendant's offer, for same objections as above stated.

Objections overruled. Exceptions taken by plaintiff.

The agreement of John, Thomas and Robert Duffield and Joseph and Mary Robinson with Joseph Bixler, dated 29th December 1838, after reciting the deed of P. Duffield to Bixler, of 29th January 1838, for 231 acres 9 perches, thus proceeds:

"And whereas it appears, by a recent accurate survey and calculation, that the said tract does not contain the number of acres named in the conveyance, and (as it is believed) was intended to be conveyed, agreeably to the contract between the parties; and also that the part of said tract now belonging to the heirs of said Duffield, contains a much greater number of acres than is named in said conveyances (M'Clure's). We therefore, as heirs of said P. Duffield, believing as we do, that in justice and equity the said Joseph Bixler (to whom John and Jacob released, &c.) is entitled to the number of acres named in the conveyance made to him, do agree that (so far as we and each of us have an

[Rice v. Bixler.]

interest in the estate of our said father) the lines on the north and south side of the land conveyed as aforesaid to the Messrs Bixlers, be extended 17 perches along the lines of that part of the tract belonging to the heirs of our said father; and that the line lately run by William West, Esq., between the two points thus formed, (being parallel with the first supposed division line,) shall be hereafter considered, to all intents and purposes, the division line; the same to be a remedy for the mistake by making up the quantity of land sold to the said Bixler. And on account of the consideration sum so paid by the said Bixler to our father, we do, for ourselves, our heirs and assigns, (but for no other of the heirs of our said father,) hereby renounce all pretensions to any right, title, interest, or claim, in or to the land lying between the division line erroneously run and named in said conveyance, and that hereby agreed upon; and that the same be possessed by said Bixler.

|  |  |
|---|---|
| John Duffield. | [seal]. |
| Thomas Duffield. | [seal]. |
| Joseph Robinson. | [seal]. |
| her<br>Mary + Robinson.<br>mark. | [seal]. |
| Robert E. Duffield. | [seal]. |

Test. Robert Elliott,
          George Baker.
    Witnesses to signing of all but Mary Robinson.

Witness to the mark of Mary Robinson,
    John Rice.

The defendant then offered Robert E. Duffield as a witness. The plaintiff objected to him as being incompetent, because of his interest in the result. The court overruled the objection, and sealed a bill of exception. The witness testified as follows:

John Rice is in possession of the 74 acres adjoining Bixlers. Had some conversation with Rice; he bought my interest in the land. I am a tenant of the land held under Rice. Hall farms it; he lives on Rice's other farm. I signed the agreement 29th December 1838. On the day we articled, me and Rice had some conversation about the line. Rice said we should settle it with Bixler, and not have any trouble about it. We were talking about the difference between West's line and Monroe's line. He did not say that he did not want to buy until that was settled. I had not signed this agreement at the time I articled with Rice. At the time I articled with Rice, West had made the line. It was last January a year (1839) I articled with Rice. Rice then knew there was a disputed line, and he said he should settle that, and have no bother. I did not sign the agreement until after we had articled. Rice and me had some conversation about this

[Rice v. Bixler.]

article of 29th December, 1838, after he and I articled, and he agreed I should sign it.

Cross-examined.—Plaintiff offered to ask witness whether he did not describe and sell to Rice, all his interest in the land up to the line as run by Monroe. Objected to; and defendant proposed to ask witness whether what he sold to Rice is not in writing. Which was objected to by plaintiff; that the defendant cannot stop the cross-examination to ask this question, and after the deed they have given in evidence. Plaintiff's objection overruled; exception taken.

Witness. The agreement of sale between me and Rice is in writing. Defendant now objected to plaintiff's question, as offered and written out at commencement of the cross-examination.

Plaintiff read agreement between Robert E. Duffield and John Rice, dated 8th of January 1839; consideration $125; conveys one-ninth part of 75 acres, more or less.

The defendant then offered in evidence the record of a former action of ejectment, by John Rice against Joseph Bixler, for the same land in which a verdict and judgment were rendered for the defendant. This for the purpose of showing that John Rice in the action trying claimed the land in his own right, and not as administrator, with the will annexed, of Patrick Duffield, deceased.

The plaintiff objected to the evidence; but the court overruled the objection and sealed a bill of exceptions.

The plaintiff then gave evidence to prove that there were debts of Patrick Duffield's estate yet unpaid to the amount of $40 or $50; and for the purpose of showing that the defendant was estopped from making defence in this action by the defence made in the former one, he called—

John Reed, Esq., sworn. When the trial came on, and the jury sworn, it was admitted the title was in Patrick Duffield originally. Plaintiff gave in evidence the will of Patrick Duffield; also the three deeds from three of the children to plaintiff, James, Robert, and Mrs Robinson and husband. It was admitted that Bixler had purchased the eastern end. Defendant gave no evidence. It was suggested plaintiffs could not recover on their own showing. I stated to the court it would be unnecessary to consume time if that point was decided against us ultimately. The objection was that the heirs could not convey land; if they had any interest, it was money and not land. I stated to the court briefly my views to sustain the plaintiff. The court intimated a pretty strong opinion against us, that we could not recover in that aspect of the cause. Some positions were stated by Mr Watts for defendant, but not argued. It was then agreed that a judgment should be entered against the plaintiff. A motion for a new trial entered without argument, and held over to April court; in the mean

[Rice v. Bixler.]

time the motion was withdrawn, judgment entered, and this suit brought.

The plaintiff requested the court to charge the jury upon the following points:

1. That the sale, by the testator, of the eastern half of the land, does not revoke his will as to the western half; but the devise as to it continues; the whole to be sold, and after paying debts and some small legacies, the whole to be divided in money; that the title to the land therefore was vested in the executors.

2. So long as debts, funeral expenses, legacies, &c., remained unpaid, it was not in the power of some of the legatees to elect to take the property as land; and the right to the land is still in the administrator with the will annexed.

3. The deeds by the legatees to Rice do not amount to an election to take the property as land, so as to devest the title of the executor or administrator with the will annexed; they are more properly assignments of the legacies.

4. That the article of agreement of Patrick Duffield to Bixler, and the deed to him, only convey the land as far as the line marked on the ground, as surveyed by Mr Monroe, and long recognised and treated by all parties as the true boundary, and give no right whatever to change the division and take in the land in dispute.

5. The line marked on the ground, treated as such by all parties, ascertained by an old fence, marked corner, and trees, and uniform, corresponding occupancy and claims for twenty years and more, must be taken as the true boundary, and will control the courses, distances, or quantities in the deeds or drafts, even where there is a purchase by the acre, and à *fortiori* here, where the sale was a lumping one, not by the acre, but for a lumping price, to such known, distinct, and visible boundary.

6. The deed or agreement of John Duffield, Thomas Duffield, Robinson and wife, and Robert to Bixler, if without any consideration paid by him to them, and if the facts supposed above are true, does not vest any title in the land in Bixler; and at all events, as there is no deed or agreement in writing, or parol, by the other legatees conveying said land to Bixler, said agreement can not defeat plaintiff's right to recover in this suit.

7. If any of the debts of Duffield, or of the legacies given by him, or if the expenses of the funeral, or administering the estate, are still unpaid, the title to the land is still in the administrator with the will annexed, and no act or election by any or all the legatees can devest it; and it lies on defendant to prove all these to be paid, or he must fail.

8. If Bixler, on the trial of the ejectment of Rice *v.* Bixler, made defence that Rice, claiming under deed from the heirs and legatees, could not sustain a suit for the land; that those legatees were only entitled to money legacies, and not land, and the title was

[Rice v. Bixler.]

in the executors; and, on the defence, obtained a judgment in that case in defendant's favour, he can not now turn round and assert the title to the land to have been in those heirs and legatees, and in Rice under them, nor in himself under them, nor deny that the title to the land is in the administrator with the will annexed.

Defendant's points:

1. If the jury believe that after the making of his will, Patrick Duffield made a sale of the eastern part of his tract of land for the purpose of paying his debts mentioned in his will, the sale of 60 acres 141 perches, and the objects and trusts created by the said will have thereby failed, it is a revocation of the will, and Patrick Duffield died intestate; particularly if the jury believe, that when Patrick Duffield died he had as much personal property as would have paid all his debts and funeral expenses, if he had chosen to appropriate the same to that object by a will.

2. If there be no evidence in the cause, that James Duffield and Robert Elliott, the executors named in the will of Patrick Duffield, ever renounced their executorship, the letters of administration, with the will annexed, to John Rice, the plaintiff, were illegally granted, and vest in him no right to recover in this suit.

3. If the jury believe that John Rice purchased out the right, title, and interest of James Duffield, Robert E. Duffield, and Robinson and wife, to the estate of Patrick Duffield, deceased, of which he died seised, at the times and under the circumstances given in evidence, by the agreements and deeds for that purpose, and that he knew at the time of his purchase that there was a mistake as to the line between Patrick Duffield and Bixler, and that the same had been rectified by the agreement of 29th December 1838, in an amicable manner, and especially if he had advised the parties to that agreement to sign it, and thus settle all dispute about the division line, he can not recover in this action.

4. If the jury believe the facts in 3d point, and that John Rice is now claiming the land in his own right, and not for the purpose of executing any trust created by the will of Patrick Duffield, he can not recover in this action.

5. That the agreement between John Rice and Robert E. Duffield, given in evidence, affords proof that the said John Rice is not prosecuting this action for the benefit of the widow of Patrick Duffield, inasmuch as he binds himself by that agreement to pay the widow the interest of the one-third of the purchase money.

HEPBURN, President.—The plaintiff's first point read. Answer— The sale by the testator of the eastern half of the land, would not revoke his will as to the western half, and the devise as to it would continue, unless the purpose for which it was designed failed; and in that event, no purpose of the devisor requiring a sale of the property, the parties entitled to it have it in their power to consider the property as land, and not as money. But if the purpose intended by the testator has not failed, as intimated

[Rice v. Bixler.]

by this point, then the title would vest in the executors, as here indicated.

Second point read.—Answered in the affirmative.

Third point read.—We think these deeds do amount to an election by the parties to them, to take as land so far as they go.

Fourth and fifth points read. — These points, if you find the facts as here stated, we answer in the affirmative. The law undoubtedly is, that the marks upon the ground are the true boundaries. You must, however, to answer this point intelligibly, so far as the facts are concerned, recur to the whole testimony, and from it determine whether they are as here indicated, or as stated by the defendant in his points; which I will presently read to you. And if the facts are as he contends, that no such marks were there, &c., but that the lines were made after Bixler *had* purchased, by mistake, and subsequently corrected by the parties in the manner indicated by the testimony; then the result may be different. If, however, you find the facts as here stated for the plaintiff in these points, then we instruct you the law is as he states.

Sixth point read.—This point we cannot answer in the affirmative. We think there was a sufficient consideration, if you believe the testimony.

Seventh point read.—This point, as a general legal proposition, would be true: but if the jury believe the facts as here stated in the defendant's third and fourth points, that he took out the letters of administration after he became the owner of the land, with a knowledge of all the facts *in relation to the mistake in the line* and its correction afterwards, and that there was personal property to the extent indicated by the latter part of defendant's first point, we cannot instruct you the defendant must fail, by reason of the small amount of debt shown to exist against the estate of Duffield at this late date.

Eighth point read.—The facts stated in this point were not the only defence taken in the case referred to, nor the only ground on which the judgment was given for the defendant there: besides that, it was between other parties and in different *rights*; we can not, therefore, instruct you the defendant is precluded from denying the title to the land being in the present plaintiff.

First point of defendant. —We cannot answer this point in the affirmative.

Second point.—Answered in the negative.

Third and fourth points read.—Answered in the affirmative.

Fifth point read.—This agreement with the other evidence in the cause, is evidence in relation to whose benefit this suit is prosecuting; the effect and benefit, however, you must determine. The whole facts of the case are for you to determine, in accordance with the law as we have stated it. The case is a difficult one, and I have had time, barely time, to read over the points

[Rice v. Bixler.]

previous to answering them. If I am wrong, the Supreme Court will set us right. Apply the facts to the law as I have stated it, and find such verdict as you think proper.

The errors assigned embraced all the bills of exception, and the answers of the court to all the points put.

*Alexander*, for plaintiff in error.
*Watts*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is an exception to the opinion of the court admitting evidence to prove that the courses and distances, as stated in the deed of conveyance from Patrick Duffield and wife to the Bixlers, would, if run on the ground, include the land in dispute; and that the division line, said to be run by George Monroe in 1819, never was marked on the ground. It is impossible to perceive any valid objection to the admission of this evidence; for certainly it was evidence which tended to show that the land in dispute, in this action, was included in, and conveyed by the deed from Duffield and wife to the Bixlers; and whether it was so included and conveyed, or not, seems to have been the chief matter in issue.

The second error is also an exception to the opinion of the court, admitting articles of agreement, dated December 29th, 1838, which were entered into by John Duffield, Thomas Duffield, Joseph Robinson and wife, and R. E. Duffield, with Joseph Bixler, making a line, run on the ground by William West, the true boundary of the land on that side, as conveyed by Patrick Duffield, their ancestor, and from whom both parties claimed, to be read in evidence, connected with an offer to give further evidence, showing that the agreement was executed with the knowledge, and by the advice of Rice, the plaintiff; and that he, in taking a conveyance from James Duffield, Robert E. Duffield, and Joseph Robinson and wife, of all the interest which they had respectively in the estate of the said Patrick Duffield deceased, had excluded the land in dispute, by describing it according to West's survey. This evidence was unquestionably not only admissible, but very material to the issue between the parties; for, as will be shown in the sequel, Rice, the plaintiff, under one aspect of this case, had not even the shadow of right to recover in it, unless it was under the conveyance just mentioned, and which the defendant proposed to give in evidence. But even supposing that the plaintiff, as the administrator with the will annexed of Patrick Duffield, had such a right under the will as would have entitled him to recover all the land belonging to the testator, at the time of making his will, which he did not part with afterwards in his lifetime, still the parties to the articles of agreement had such an interest in the land, as would have enabled them to settle a mere

question of boundary connected with it; unless indeed it could have been shown that such settlement would have affected the rights of the creditors of the testator.

The third error is an exception to the competency of Thomas Duffield, as a witness for the defendant below, taken on the ground of interest, as it was alleged. The court below decided that no interest, such as would render him incompetent, had been shown, and therefore overruled the objection made to him by the counsel of the plaintiff. It is sufficient to say that no interest has been shown here, going to affect his competency, and therefore he was properly admitted to testify as a witness on behalf of the defendant below. It seems also that the plaintiff did not consider him incompetent to testify for him, for he made him his witness afterwards, as it appears in the course of the trial.

The fourth error is an exception to the opinion of the court, in permitting the counsel of the defendant to ask Robert E. Duffield, while he was undergoing a cross-examination by the plaintiff's counsel, whether what he sold to Rice (meaning the plaintiff) was not in writing. This question was put to the witness in connection with an objection to his answering a previous question, just put by the plaintiff's counsel to him, asking him whether he did not describe and sell to Rice all his interest in the land, up to the line as run by Monroe. It was certainly correct to ascertain first from the witness, before he answered the question asked by the plaintiff's counsel, whether what he had sold to the plaintiff had not been reduced to writing between them; because if it had, the writing was better evidence than anything that the witness could state from his recollection on the subject; and hence, what he would have stated in answer to the plaintiff's question, could not be admitted as evidence at all in the case.

The fifth error is an exception to the admission in evidence of the record of a former action of ejectment brought by the plaintiff in this case, but not as administrator with the will annexed of Patrick Duffield, against the present defendant for the same land. This evidence, it seems, was offered and given for the purpose of showing that the plaintiff claimed the land in that action, in his own right, and not as administrator under the will, and that upon trial a verdict and judgment were given against him. We think the evidence was admissible, and such as possibly might have been of some weight in turning the scale in favour of the defendant in this action, and therefore cannot say it was inadmissible.

The sixth error is an exception to the court's permitting the defendant's counsel to ask George Baker, a witness, sworn on behalf of the plaintiff, to give evidence on the trial of the cause, " what the talk was, referred to in his examination in chief," when he stated that " Bixler and Duffields had some talk about the quantity of land, because they had not their papers with them." If we judge from the answer of the witness to the question, it

would not appear to have done the plaintiff any harm, nor to have had much bearing upon the cause in any way. We therefore think there is no error in it.

The remaining errors, no less than nine in number, are exceptions to the instruction given by the court to the jury, all excepting the last, upon points submitted for that purpose by the counsel of the plaintiff below.

The seventh error is the first of them, and is founded upon the answer of the court to the plaintiff's third point, in which his counsel requested the court to charge the jury, "that the deeds made by the legatees, (meaning James Duffield, Robert E. Duffield, and Robinson and wife,) to Rice, the plaintiff, do not amount to an election to take the property as land, so as to devest the title of the executors or administrator with the will annexed; they are more properly assignments of the legacies." To this the court answered, "We think these deeds do amount to an election by the parties to them, to take as land so far as they go." It is very evident from the tenor of the deeds, that the grantors considered themselves as having an interest in the land, as land, and to an extent that was inheritable too; for the land is expressly mentioned as the subject matter of the conveyance, and words of inheritance are likewise employed therein in conveying it. It is also equally evident that the grantee, having taken the deeds in the form in which they are, must have been of the same opinion. If the plaintiff, however, as administrator, had an interest in the land, or an authority over it under the will, for the purpose of paying the debts of the testator, those deeds could not divest him of it; nor did the court tell the jury, in their answer, that it did; but strictly, perhaps, in order to have answered the point fully, they ought to have expressed their opinion as to the effect of the deeds in this particular. This defect, however, seems to be supplied by their answer to the plaintiff's first and second points, where it is answered in his favour.

The eighth and ninth errors are exceptions to the answers given by the court to the plaintiff's fourth and fifth points. The plaintiff's counsel below, in propounding these points to the court, have assumed matters of fact, which were not conceded by the opposite party, but actually denied, and evidence given by him, tending to prove that they were not as stated by the counsel of the plaintiff in these points. The court, therefore, on this ground might have declined answering them, because counsel in stating their points have no right to assume facts that are controverted, and which from the evidence the jury may properly find do not exist. In such case, if the counsel wishes to have the direction of the court to the jury as to the law that may become applicable, he ought to state the facts hypothetically. But the court, as it would seem, being willing to meet the request of the counsel so far as they could, told the jury, " These points, if you find the facts as stated

[Rice v. Bixler.]

in them, we answer in the affirmative. The law undoubtedly is, that the marks made upon the ground, are the true boundaries. You must, however, answer the points intelligibly so far as the facts are concerned, view the whole testimony, and from it determine whether the facts are as therein indicated, or as stated by the defendant in his points, which we will presently read to you: and if the facts are as he contends, that no such marks were there, &c., but that the lines were made after Bixler purchased, by mistake, and subsequently corrected, by the parties, in the manner indicated by the testimony, then the result may be different. If, however, you find the facts as there stated for the plaintiff in these two points, then we instruct you the law is as he states." This direction was not only as favourable to the plaintiff as he had any right to ask, but it was going as far as the court could well go, without intrenching upon the province of the jury, by deciding on the facts.

The tenth error is an exception to the answer given by the court to the plaintiff's sixth point. The direction requested in this point was, that " the deed or agreement of John Duffield, Thomas Duffield, Robert E. Duffield and Robinson and wife to Bixler, if made without any consideration paid by him to them, and if the facts above supposed are true, does not vest any title to the land in Bixler; and at all events, as there was no deed or agreement made either in writing or by parol, by the other legatees, conveying said land to Bixler, said agreement could not defeat the plaintiff's right to recover in this suit." To which the court replied, " This point we cannot answer in the affirmative. We think there was a sufficient consideration, if you believe the testimony." The objection to this answer is, that it only meets the point in part, and also that, so far as it goes, it is erroneous. The deed or agreement here referred to, was not properly a deed of conveyance, nor intended by the parties to be so, but of compromise and settlement of boundary, fixing definitively the location of a division line of land, including the land in dispute, which Patrick Duffield, the father of John Duffield, Thomas Duffield, Robert E. Duffield, and Mrs Robinson, in his lifetime, had sold and conveyed to Bixler. A dispute, according to the evidence, had actually arisen between the parties in regard to it, and the only object of the deed or writing was, to adjust and settle it. Now, it is too well settled to be questioned, that an agreement of compromise, or settlement of a dispute between owners of adjoining lands, as to the division line between them, contains in itself a sufficient consideration to make it binding, when fairly made, on both parties. The peace and quiet of society require that it should be so. In this case it must be taken, that the agreement only determined the precise and true location of the land, which Patrick Duffield, the father, had sold to Bixler and been fully paid for in his lifetime by the latter. The residue of this point, which the plaintiff com-

plains was not answered, was, we think, substantially answered in his favour in the answers given by the court to his first and second points, when the court yielded their assent to the proposition of the counsel for the plaintiff, that the title to the land, which properly did belong to the testator at the time of his death, became thereupon vested by operation of the will in the executors, and that so long as debts, &c., remained unpaid, it was not in the power of some of the legatees to elect to take the land as land; and that the right thereto still remained in the administrator with the will annexed. This was certainly going as far as the plaintiff had even the colour of right to claim.

The eleventh error is an exception to the opinion given by the court to the seventh point submitted by the counsel of the plaintiff below. By this point the court were requested to instruct the jury that, " if any of the debts of the testator or of the legacies given by him, or of the expenses of the funeral, or of administering on the estate, were still unpaid, the title to the land was in the administrator with the will annexed, and no act or election by any or all the legatees could devest it; and it lies on the defendant to prove all these to be paid, or he must fail." The court replied, " This point, as a general legal proposition, would be true. But if the jury believe the facts are as stated in the defendant's third and fourth points, that the plaintiff took out the letters of administration after he became the owner of the land, (meaning after he obtained a transfer from James Duffield, Robert E. Duffield, and others) with a full knowledge of all the facts in relation to the mistake in the line, (meaning the division line,) and its correction afterwards; and that there was personal property to the extent indicated by the latter part of the defendant's first point, we cannot instruct you that the defendant must fail by reason of the small amount of debt shown to exist against the estate of Duffield, at this late date." The third and fourth points of the defendant referred to here by the court, requested the court to direct the jury, " if they believed that John Rice, the plaintiff, purchased out the right, title and interest of James Duffield, Robert E. Duffield, and Robinson and wife, to the estate of Patrick Duffield deceased, of which he died seised, at the times and under the circumstances given in evidence by the agreement and deeds for that purpose, and that he knew at the time of his purchase that there was a mistake as to the line between Patrick Duffield and Bixler, and that the same had been rectified by the agreement of the 29th of December 1838 in an amicable manner, and especially if he had advised the parties to that agreement to sign it, and thus settle all dispute about the division line; he cannot recover in this action." The few and very small claims of which evidence was given against the estate, if not actually paid, were barred by the statute of limitations, and therefore no longer chargeable upon the estate, so that the plaintiff could have no right to

recover the land, as administrator with the will annexed for the purpose of paying debts under the provision to this effect contained in the will. *Culpepper* v. *Aston*, (2 *Chan. Cas.* 115; *S. C.* 223); *Roper* v. *Radcliff*, (9 *Mod.* 171); *S. C.* 2 *Eq. Ca. Abr.* 508. But, admitting the estate to be liable to the payment of the small amount of the claims exhibited, it was impossible that the rights of the creditors could be affected by the settlement of the division line agreed on by the heirs or devisees of the testator, as it left land clear of all dispute of greatly more than sufficient value to satisfy the amount of those claims. Hence it appears to me, that it was competent for the heirs or devisees to settle the dispute about the division line with Bixler, as their rights alone were to be affected by it; and though it seems that all the heirs or devisees of the testator were not in the country to join in the settlement of the line, yet until their clear dissent shall be shown, it ought to be regarded as conclusive upon the plaintiff as administrator *cum testamento annexo*, and most clearly so if he advised it, whether he claims to recover the land as administrator or as assignee of James Duffield, Robert E. Duffield, and Robinson and wife.

The twelfth error is to the answer of the court on the plaintiff's eighth point; in stating, as the counsel for the plaintiff in error alleges, to the jury matters as facts which were not in proof, instead of answering the point as put, and in refusing to answer it as put. By this eighth point the court were requested to instruct the jury, that "if Bixler, on the trial of the ejectment of Rice against Bixler, mentioned in the fifth error, made the defence, that Rice, claiming under deeds from the heirs and legatees, could not sustain a suit for the land; that those legatees were only entitled to money legacies, and not land, and the title was in the executors; and on this defence obtained a judgment in that case in defendant's favour, he cannot now turn round and assert the title to the land to have been in those heirs and legatees, and in Rice under them; nor in himself under them, nor deny that the title to the land is in the administrator with the will annexed." To this the court responded, " The facts stated in this point were not the only defence taken in the case referred to; nor the only ground on which the judgment was given for the defendant there. Besides that, it was between other parties and in different rights; we cannot, therefore, instruct you that the defendant is precluded from denying the title to the land being in the present plaintiff." We think it would have been error in the court to have instructed the jury as the plaintiff's counsel requested. No authority has been adduced to show that the defendant cannot, in a second action of ejectment, brought against him for the same land, repudiate the title which he set up to defeat the plaintiff in the first. One action of ejectment, in which there has been a trial, verdict, and judgment, does not conclude the parties. Suppose the defendant,

[Rice v. Bixler.]

on the trial of the first action, were to defeat the plaintiff's recovery, by showing an outstanding title in a third person; and that the plaintiff thereupon purchased that outstanding title, and then brought a second ejectment, it will scarcely be pretended, I think, that the defendant, on the trial of it, would be precluded from setting up another outstanding title in a different person, still better than the one which he used on the trial of the first action. The plaintiff in an action of ejectment must recover upon the strength of the title which he shows to be vested in him, unless there has been some relationship between him and the defendant, such as landlord and tenant, or the plaintiff be the purchaser of the defendant's interest in the land, whatever it may have been, at a judicial sale, where the defendant is estopped from denying the plaintiff's right to recover. But it is clear that in the present case, there is nothing of the sort to create an estoppel on the part of the defendant.

The thirteenth error, which is an exception to the answer given by the court to the defendant's third and fourth points, has been passed on already, in what has been said on the eleventh error.

The fourteenth error is an exception to the answer given by the court to the fifth point of the defendant, because the court did not answer it in the negative. The defendant by this point requested the court to instruct the jury, "that the agreement between John Rice and Robert E. Duffield, which was given in evidence, afforded proof that the said John Rice was not prosecuting this action for the benefit of the widow of Patrick Duffield, inasmuch as he bound himself thereby to pay the widow the interest of one-third of the purchase money." To which the court replied, "This agreement, with the other evidence in the cause, is evidence in relation to whose benefit this suit is prosecuting. The effect, and benefit of it, however, you must determine." We can perceive no error in this answer; for why should the plaintiff agree to pay the widow one-third of the whole purchase money of the land, if it were to be sold for the purpose of paying debts of the testator?

There is nothing in the fifteenth, which is the last error assigned.

　　　　　　　　　　Judgment affirmed.