## Horner's and Piles's Appeal.—Erwin's Estate.

1. A testator devised land to his wife for life, and directed it at her death to be sold and the proceeds divided amongst his children. One of the children died in the life of the wife, and his administrator sold his interest in the land by order of the Orphans' Court for the payment of his debts. *Held*, that his interest passed to the purchaser.

2. The administrator was the actor in procuring the sale and carrying out his own intention to dispose of the devisee's interest in the devise to pay his debts, which were a lien upon all his real and personal estate.

3. It did not matter that the administrator mistook the nature of the property and invoked the aid of the court for that for which his own powers were adequate, the sale of his intestate's interest in the devise.

4. His deed was therefore an equitable, if not a legal assignment of the interest of the intestate in the testator's realty.

5. Hess v. Short, 7 Barr 231, explained.

November 19th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Appeal from the decree of the Orphans' Court of *Greene county*, in the matter of the distribution of the estate of William Erwin, deceased. No. 152, to October and November Term 1867.

William Erwin, Sr., by his will proved February 8th 1842, directed that his widow should have his real estate for life, and at her death it should be sold and divided as follows:—

" Lewis Erwin, his son, to have one-half as much as one of his daughters; Mary and Maria, his daughters, and William Erwin, his son, to have equal shares, and it is the will of the father that

his son William Erwin shall have one hundred dollars over and above an equal share with his daughters."

William Erwin the son, died on the 31st of May 1843, intestate, unmarried and without issue. His interest in the real estate of his father was sold to Vincent Long, under an order of the Orphans' Court for the payment of his debts. The sale was confirmed March 19th 1845.

Lewis Erwin afterwards died, leaving two children, one of whom only, Elizabeth Piles, is still living.

Mary Erwin died February 14th 1857, intestate, unmarried and without issue. Maria Erwin, intermarried with Samuel Horner, is still living.

The widow of the testator having died, the executor sold the land under the directions of the will, and C. A. Black, Esq., was appointed auditor to distribute the fund in his hands arising from the sale.

The only disputed question before the auditor was as to the share of William Erwin, the son. The contest was between Maria Horner and Elizabeth Piles, on the one side, and the representatives of Vincent Long, the purchaser of William Erwin's interest, on the other. The former contended that the order in the testator's will was a conversion of the land; that the sale by the administrator of William's interest being a judicial sale, passed no title to the purchaser, and that his sister and niece being his next of kin, were entitled to his share of the fund. The representatives of Long contended that the sale by the administrator of William Erwin passed his interest to Long.

The auditor, after an elaborate examination and able discussion of the authorities and principles involved, concluded his report:—

" From these authorities it seems clear that a sale and conveyance by a partial owner of his interest in land directed by a testator to be sold, would vest a good title in the purchaser to his share of the proceeds of the land when sold. Does it follow that a sale and conveyance by his personal representative, describing the interest as real estate, would have the same effect?

" At the time of the death of William Erwin, Jr., he owned little or no other property than this interest in the land directed by his father's will to be sold. There were debts and funeral expenses to be paid; and whether we treat the interest as real or personal estate, it was undoubtedly assets for their payment. If it was personal estate, and of this there can be no doubt, it vested in his personal representative, as trustee for the creditors and heirs; and it was the duty of the administrator to embrace it in his inventory. But whether returned or not, the omission to do so, in no way affected its character as personal

assets, or impaired the right of the administrator to realize its value. It was his duty to proceed at once, and dispose of it upon terms most advantageous to the parties interested; and to enable him to do so the law clothed him with the fullest authority. So long as he acted in good faith, his title to the property, as to sale and transfer, was as ample and absolute as that of the decedent in his lifetime; and neither creditor nor heir could lawfully interfere with any disposition he might make of it—all they could do was to hold him to an account for the proceeds of the sale. There was nothing in the nature of the interest to prevent a sale. The value at the time of sale was somewhat conjectural, it is true, owing to the uncertain period of enjoyment. But the sale of an estate *per autre vie*, is liable to the same objections, and that and similar estates and interests pass to the personal representative by the express direction of the Act of Assembly.

" The administrator, under the view of the auditor, having full power to make the sale, and to transfer the interest by a deed, describing it as land, the proceedings in the Orphans' Court were at most but a nullity, and in no way could affect the title of the purchaser. They show a mistake as to the character of the interest, but can do no more. The title of the purchaser was valid without the aid of the Orphans' Court—the form of the conveyance being immaterial.

" Your auditor, therefore, holds and decides that the deed of the administrator of the estate of William Erwin, Jr., deceased, to Vincent Long, since deceased, operated as an *equitable assignment*, and passed a good title to the purchaser and his heirs, to said William's share of the proceeds of the land when sold."

The auditor reported a distribution accordingly.

Mrs. Horner and Mrs. Piles excepted to the report of the auditor. The report was confirmed by the Orphans' Court.

The exceptants appealed, and assigned for error the confirmation of the report.

*Downey* and *Wyly*, for appellants, cited Morrow *v.* Brenizer, 2 Rawle 185; Alison *v.* Wilson, 13 S. & R. 333; Brown and Sterrett's Appeal, 3 Casey 62; Parkinson's Appeal, 8 Id. 455; Brolasky *v.* Gally, 1 P. F. Smith 509; Bashore *v.* Whisler, 3 Watts 490; Fox *v.* Mench, 3 W. & S. 444; King *v.* Gunnison, 4 Barr 171; Randolph's Appeal, 5 Id. 245; Hess *v.* Shorb, 7 Id. 231; Shurtz *v.* Thomas, 8 Id. 359; Costen's Appeal, 1 Harris 292.

*J. A. J. Buchanan*, for appellees, cited Uvedale *v.* Halfpenny, 2 P. Wms. 151; Sheppard's Touch. 86 n. *d*; Marshall *v.* Franks, Gilbert's Eq. R. 143; McWilliams *v.* Martin, 12 S. & R. 270; Costen's Appeal, 1 Harris 299; Hay *v.* Mayer, 8 Watts 212; Hess

*v.* Shorb, 7 Barr 231; Graff *v.* Smith, 1 Dallas 481; Morris *v.* Smith, 1 Yeates 238; Bowen *v.* Bowen, 6 W. & S. 504.

The opinion of the court was delivered, January 7th 1868, by

AGNEW, J.—It may be conceded that the will of William Erwin converted his real estate into personalty, so far as it relates to the interests of his children in the proceeds of sale directed to be made at the death or marriage of his widow: Allison's Executors *v.* Wilson, 13 S. & R. 333; Morrow *v.* Brenizer, 2 Rawle 185; Brolaskey *v.* Gally's Executors, 1 P. F. Smith 509. But this conversion is a doctrine of equity to effectuate the purposes of the testator: Craig *v.* Leslie, 3 Wheat. 563.

The principle is, that equity regarding the substance and not the mere forms of things, considers that which is directed or agreed to be done, as if it were done. This being the principle, it would be against equity, and contrary to its own maxim which looks at the substance of things, to view the conveyance of the administrator of William Erwin, Jr., contrary to its manifest intention— which was to convey whatever interest the intestate had in the estate of his father the testator. Wiliam Erwin, Jr., owed debts; these debts were a lien upon his estate real and personal. Whether his interest in the real estate, which his father, the testator, directed to be sold, were real or personal, it was bound for the payment of his debts. It was the intention of his administrator to dispose of this interest for that purpose. He became the actor, and moved the court towards the end he would himself accomplish. It was not an adversary proceeding in which he was acted upon by others who must proceed at their own peril; but he himself became the petitioner, and his prayer was that the interest of his intestate might be sold to pay the debts. If we consult his intention, therefore, what matters it that he mistook the nature of the property, called it real estate, and invoked the Orphans' Court to supply that defect in his own power which the supposed nature of the estate denoted. Nevertheless, he was moving, though supported as he thought by the strong arm of the Orphans' Court, to the same end to which his own powers were adequate, to wit, the sale of his intestate's interest in the testator's estate; and in consummation of this purpose he conveyed to the purchaser such *interest* and share as were devised or *bequeathed* to him the said William Erwin, Jr., by the last will and testament of William Erwin, Sr. This being the clear intention and purpose of the administrator, and having himself, aside from the authority of the Orphans' Court, the power to sell this interest as personalty, and the proceeding not being adversary, but at his own instance, and intended to effectuate the very end he had in view; equity, looking at the substance and true intent of the

transaction, steps in and treats his act as efficient to the purpose. His deed is therefore an equitable assignment at least, if it may not indeed be an actual assignment at law, of the personal inte-rest of the intestate in the proceeds of the testator's realty when it should be converted; and this the more so, when we consider that in fact there was no conversion, the real estate yet standing as the existing source from which the interest in the proceeds was to spring, and was viewed as personalty only through the medium of equity. The cases of Hays *v.* Mayer, 8 Watts 212, Rice *v.* Bixler, 1 W. & S. 445, and Costen's Appeal, 1 Harris 292, fully support this position. Hess *v.* Short, 7 Barr 231, does not mili-tate against it. That case was decided on the ground that the executor not having executed the power of sale, and the contin-gency not having happened on which the power was to be exe-cuted, the effect of the judgment would be to fix the executor prematurely for the money; and he was therefore not liable as garnishee in an execution-attachment.

Agreeing with the auditor and the court below as to the effect of the administrator's deed, the decree of the Orphans' Court is affirmed and the appeal dismissed at the costs of the appellants.